UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

MICHAEL ANGELO BURNETT,

        Plaintiff,                Case No. 2:22-cv-129

v.                                          Honorable Maarten Vermaat

J. CORRIGAN et al.,

        Defendants.
_____/

## OPINION DENYING LEAVE
## TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff seeks leave to proceed *in forma pauperis*. Because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g).

Where a plaintiff is ineligible for *in forma pauperis* status under 28 U.S.C. § 1915, "he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002). That means payment should precede preliminary review pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c), which the Court is required to conduct prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). (ECF No. 5.) That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to enter an order denying Plaintiff leave to proceed *in forma pauperis* and directing him to pay the $402.00 filing fee. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the

2

defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

The Court will order Plaintiff to pay the $402.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.[2] This fee must be paid within twenty-eight (28) days of this opinion and accompanying order. If Plaintiff fails to pay the fee, the Court will order that this case be dismissed without prejudice. Even if the case is dismissed, Plaintiff must pay the $402.00 filing fees in accordance with *In re Alea*, 286 F.3d 378, 380–81 (6th Cir. 2002).

## Discussion

The PLRA, which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $52.00. 28 U.S.C. § 1914(b); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. The miscellaneous administrative fee, however, "does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan. In more than three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See Burnett v. Marschke et al.*, No. 2:09-cv-225 (W.D. Mich. Feb. 5, 2010); *Burnett v. Hofbauer et al.*, No. 2:09-cv-192 (W.D. Mich. Dec. 2, 2009); *Burnett v. Caruso et al.*, No. 2:09-cv-180 (W.D. Mich. Oct. 8, 2009); *Burnett v. Hill et al.*, No. 2:09-cv-39 (W.D. Mich. Mar. 6, 2009); *Burnett v. Caruso et al.*, No. 2:08-cv-168 (W.D. Mich. Jan. 5, 2009). Moreover, Plaintiff has been denied leave to proceed *in forma pauperis* under the

three-strikes rule in numerous cases. *See, e.g., Burnett v. Kipela et al.*, No. 2:10-cv-105 (W.D. Mich. Oct. 18, 2010) (ECF Nos. 3, 4). By late 2010, Plaintiff had accumulated all five of his strikes and had been denied *in forma pauperis* status in two dozen additional cases in the Western District of Michigan.

Moreover, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf*. [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

5

The actions about which Plaintiff complains purportedly occurred while Plaintiff was incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF). Plaintiff sues URF Warden J. Corrigan, Correctional Officers Unknown Perry and Unknown Sawyers, and six John Does, who are also correctional officers at URF.

Plaintiff alleges that he was transferred to URF on April 27, 2022, and was placed in the general population Neebish Unit. (ECF No. 1, PageID.3.) The next day, an officer told Plaintiff to go to the gym to retrieve his personal property. (*Id.*) After Plaintiff arrived at the gym, John Doe #1 told him that he should have refused to transfer back to URF because of previous grievances he had filed. (*Id.*) John Doe #1 threw Plaintiff's television in the trash, stating, "This will teach you about filing lawsuits against correctional officers. Now go back to Neebish Unit, because we are going to entertain your 'black ass' over there." (*Id.*)

When Plaintiff returned to Neebish Unit, John Doe #2 approached him with an industrial-sized spray bottle "filled halfway with a brown colored liquid." (*Id.*) He asked Plaintiff if he was ready, and Plaintiff asked, "ready for what." (*Id.*, PageID.3–4.) John Doe #2 responded, "To get the sh** you are blowing out of your mouth in those lawsuits put back in your mouth." (*Id.*, PageID.4.) He then sprayed human waste in Plaintiff's face and mouth. (*Id.*) John Does #3 and 4 were sitting behind the officers' desk and did not stop John Doe #2. (*Id.*) They instead laughed and told Plaintiff to take a shower and to not forget to wash out his mouth. (*Id.*)

On May 15, 2022, Plaintiff returned from the law library when Defendant Perry came up to him with an industrial-sized spray bottle filled with a brown liquid. (*Id.*) Plaintiff "immediately covered [his] face with [his] hands." (*Id.*) Defendant Perry told Plaintiff to remove his hands or go to administrative segregation for assaulting staff. (*Id.*) Plaintiff removed his hands from his face and complied with Defendant Perry's order to open his mouth wide. (*Id.*) Defendant Perry raised

6

the spray bottle and sprayed human waste into Plaintiff's mouth. (*Id.*) John Does #5 and 6 were at the officers' desk and laughed, making no effort to stop Defendant Perry. (*Id.*, PageID.5.)

On May 17, 2022, Defendant Sawyers came to Plaintiff's cell and called Plaintiff to the door. (*Id.*) When Plaintiff approached, Defendant Sawyers sprayed human waste in his face, stating, "This is what a white man sh** smell like n*****." (*Id.*) Plaintiff claims that officers assigned to the security cameras get "on the radio and let the Defendants know if someone was in the area before they assaulted" him. (*Id.*) They are also destroying the video recordings. (*Id.*)

Plaintiff contends that he is in imminent danger because Defendants are "assaulting [him] with human waste two times a week." (*Id.*) He avers that these assaults aggravate his GERD because he chokes on his own vomit while sleeping. (*Id.*) He also experiences intense chest pain. (*Id.*, PageID.6.) The human waste causes him to feel nauseated and experience vomiting. (*Id.*) Plaintiff contends that Defendants Perry and Sawyers have also interfered with his treatment for GERD because his prescribed medication becomes ineffective when he is forced to ingest human waste. (*Id.*)

The allegations set forth above are similar to allegations in three complaints Plaintiff filed in 2020. *See Burnett v. Macauley et al.*, No. 1:20-cv-1116 (W.D. Mich.); *Burnett v. Wilborn et al.*, No. 1:20-cv-1161 (W.D. Mich.); *Burnett v. Washington*, No. 1:20-cv-1173 (W.D. Mich.). In those complaints, Plaintiff alleged that various officials used the prison "Safety System" to deliver feces and urine directly into Plaintiff's mouth over a period of years. Plaintiff admitted that he suffered from paranoia and schizophrenia.[3] The Court ultimately determined that Plaintiff's allegations in

---

[3] Plaintiff's allegations are also similar to allegations in complaints he filed in the Eastern District of Michigan. *See Burnett v. Jenkins et al.*, 2:19-cv-13513 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility and Ionia Correctional Facility delivered feces and urine into his mouth using the prison safety systems); *Burnett v. Walsh et al.*, No. 2:18-cv-11063 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility used the Safety System to

all three cases were frivolous because they were "fantastic or delusional and [rose] to the level of irrational or wholly incredible." *Rittner*, 290 F. App'x at 79.

  As an initial matter, Plaintiff's allegations concerning the confiscation of his television and the use of racial slurs against him simply fail to demonstrate that he is imminent danger of serious physical harm. With respect to his allegations that Defendants force him to consume human waste twice a week, this Court has noted that "[i]f [a prison official] truly placed a 'feces sandwich' on [a prisoner's] food tray with the intention of [the prisoner] eating the feces, there is no question that [the prisoner's] Eighth Amendment rights were violated." *See Jennings v. Bradley*, No. 2:06-cv-154, 2007 WL 2683530, at *5 (W.D. Mich. Sept. 7, 2007). Allegations concerning forcible consumption of human waste, however, have been Plaintiff's recent "go to" allegations to avoid the "three strike" consequences of previously filing meritless lawsuits. While Plaintiff's instant complaint does not allege that Defendants have used URF's "safety system" to deliver feces and urine directly into his mouth, he alleges that Defendants carry around an industrial-sized spray bottle filled with feces and urine and use that bottle to spray human waste directly into Plaintiff's mouth. Based on the frequency with which Plaintiff has allegedly faced such actions, and the Court's previous conclusion that similar allegations did not suffice to show imminent danger, the Court again finds that Plaintiff's currently allegations are "fantastic or delusional and rise to the level of irrational or wholly incredible." *Rittner*, 290 F. App'x at 798.

  Therefore, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action. Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the civil action filing fees, which total $402.00. When Plaintiff pays his filing fees, the Court will screen his complaint

---

deliver feces and other bodily fluids into his mouth); *Burnett v. Herron et al.*, No. 5:18-cv-12471 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility put feces into his mouth at least three times a week).

8

as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). If Plaintiff does not pay the filing fees within the 28-day period, this case will be dismissed without prejudice, but Plaintiff will continue to be responsible for payment of the $402.00 filing fees.

Dated: July 22, 2022  /s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge

**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:

Clerk, U.S. District Court
399 Federal Bldg.
110 Michigan St., N.W.
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**